United States District Court
Southern District of Texas
**ENTERED**
**February 14, 2023**
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jose Martinez, | § § § | |
| Plaintiff, | § | |
| | § | Case No. 4:22-cv-00547 |
| v. | § § | |
| Harris County, Texas, et al., | § § | |
| Defendants. | § § | |

## <u>**MEMORANDUM AND RECOMMENDATION**</u>

Defendants Harris County (the "County"), Sherriff Ed Gonzalez ("the Sherriff"), Lieutenant John Hernandez, Deputy Jacoby Henderson, and Deputy Louis Ybarra (collectively, "Individual Defendants"), have filed separate motions to dismiss all claims. Dkts. 12, 13, 29, 37, 44. In the interim, this case was referred to the undersigned judge. Dkt. 38. After reviewing the motions, responses, Dkts. 18, 33, 39, 47, replies, Dkts. 21, 34, 40, 48, and the applicable law, it is recommended that the motions to dismiss filed by the County, the Sherriff, Lieutenant Hernandez, and Deputy Henderson be granted in full. Deputy Ybarra's motion to dismiss should be granted in part but denied with respect to Plaintiff Jose Martinez's claims of excessive force and for assault. Martinez's request for leave to amend should be denied, as should certain defendants' requests for a stay of discovery.

## Background

The following allegations are taken as true at this stage.  In February 2022, Martinez was driving home when he saw a confrontation in front of a school.  Dkt. 11 ¶ 9.  An adult man lying in the street was being held down by "one or more" people, with several others standing around.  *Id.*  As Martinez approached in his car, he saw that the man lying in the street had scratches on his face, and his feet were bound with rope-like material.  *Id.* ¶¶ 10-12. When Martinez asked the group what was going on, one of them responded that everything was fine and told Martinez to keep driving.  *Id.* ¶ 13.

Martinez asked the man in the street if he was "okay."  *Id.* ¶ 14.  The man said that he did not know any of the people restraining him and pleaded to Martinez, "help me, man!"  *Id.*  After Martinez spoke with the people at the scene, one of them, an unidentified woman, left to go find a police officer.  *Id.* ¶ 15.  Martinez decided to wait for the police to arrive, so he parked his car and called 911.  *Id.* ¶¶ 16, 18.  He told the dispatcher what was happening and stayed on the line.  *Id.* ¶ 18.

Shortly thereafter, the woman returned with a police officer who was wearing a school district uniform.  *Id.* ¶ 19.  *Id.*  The woman yelled at Martinez, "You see, I came back with a cop!  And I told him that you tried to hit me!"  *Id.* ¶ 20.  Martinez denied attempting to hit her, and the officer told him not to

worry about what she was saying.  *Id.* ¶ 21.  The officer told Martinez to wait in his car, which he did.  *Id.* ¶¶ 21, 22.

At least three deputies from the Harris County Sheriff's Office eventually arrived.  *Id.* ¶¶ 23, 26-28.  One of them, Deputy Ybarra, approached Martinez and questioned him.  *Id.* ¶ 23.  After ordering Martinez to get out of the car, Ybarra removed him and placed him in handcuffs.  *Id.* ¶ 24-25.

According to the complaint, the officers used considerable force on Martinez while he was handcuffed.  Deputy Ybarra yanked Martinez by the handcuffs, causing injury.  *Id.* ¶ 25.  Another officer, "possibly named Henderson" pushed Martinez "for no reason," causing pain to his already injured knee, and another unnamed deputy kicked him in the leg.  *Id.* ¶¶ 26, 28.  After putting Martinez in the squad car (and while Martinez remained handcuffed), Deputy Ybarra demanded that Martinez exit the car and then slammed him against it.  *Id.* ¶ 29.  Martinez also alleges that Deputy Ybarra not only refused to loosen the handcuffs, which were too tight, but forcibly squeezed them, thereby inflicting pain that lingered for weeks.  *Id.* ¶¶ 27, 30.

Martinez filed suit on January 20, 2022, alleging various constitutional violations under 42 U.S.C. § 1983 and asserting an assault claim under Texas law.  Dkt. 1.  Due to problems during service, Deputy Ybarra was not served

until almost a full year after Martinez filed the original complaint.  Dkts. 42, 43.  All defendants have moved to dismiss Martinez's claims.

## Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and alteration omitted).

"When a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an 'obligation ... to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery.'" *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263-64 (5th Cir. 2019) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986)).  After all, qualified immunity includes immunity from suit, not just immunity from liability.  *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018).

Once a defendant "invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). To meet that burden, a plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Gonzalez v. Trevino*, 42 F.4th 487, 491 (5th Cir. 2022) (quoting *Backe v. Leblanc*, 691 F.3d 645, 648 (5th Cir. 2012)).

<u>Analysis</u>

**I.   <u>Harris County and Sheriff Gonzalez</u>**

**A.   Martinez failed to state a claim against Sheriff Gonzalez.**

Although Sheriff Gonzalez invokes a qualified immunity defense, *see* Dkt. 13 at 4, most of the claims against him simply fail to state a plausible basis for relief under Rule 12(b)(6). Martinez has not adequately alleged that the Sherriff was personally involved in the alleged constitutional violations, that the Sherriff instituted an unconstitutional policy, and that the Sheriff was properly named as a defendant in his official capacity.

i.   <u>Martinez has not plausibly alleged that the Sheriff participated in any constitutional violations.</u>

Martinez advances two sets of claims against Sheriff Gonzalez in his individual capacity. One asserts that the Sheriff actively participated in the

5

February 2020 incident—and the overarching alleged violations of Martinez's constitutional rights. Dkt. 11 ¶ 38. The other asserts that the Sherriff enforced an unconstitutional policy. *Id.* ¶ 41.

For a supervisor to be liable under 42 U.S.C. § 1983, the supervisor must have either "(i) affirmatively participate[d] in acts that cause a constitutional deprivation or (ii) implement[ed] unconstitutional policies that causally result[ed] in the plaintiff's injuries." *Casanova v. City of Brookshire*, 119 F. Supp. 2d 639, 660 (S.D. Tex. 2000) (citing *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996)). Here, Martinez's allegations are too conclusory to plausibly state a basis for relief.

Martinez claims that "[t]he deputies referenced (includes Lt. Hernandez and Sheriff Gonzalez) engaged in deliberate and outrageous invasion of Plaintiff's rights that shocks the conscious [sic] in violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments ...." Dkt. 11 ¶ 38. But as Sheriff Gonzalez notes—and the Court agrees—Martinez pleaded no facts suggesting that the Sheriff was present at the incident, that he told any of the officers how to conduct the stop, or that he even knew the stop had occurred. Dkt. 13 at 5. Martinez's theory that the Sherriff participated in any violations is thus foreclosed. *See James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir.

6

2008) ("A supervisor is not personally liable for his subordinate's actions in which he had no involvement.").

Martinez's allegations that the Sheriff instituted an unconstitutional policy are similarly deficient.  The complaint asserts, without specifics, that the deputies were acting through "official policies, practices and customs." Dkt. 11 ¶ 41.  No facts indicate what that supposed policy entails, much less that the Sheriff implemented it.[1]  These bare assertions cannot survive dismissal.  *See Moore v. Bowie Cnty., Tex.*, 2012 WL 4355000, at *2 (E.D. Tex. Sept. 21, 2012) (rejecting reliance "solely on conclusory allegations as to the existence of a policy, without a factual predicate," citing, *inter alia, Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).

      ii.    <u>Claims against the Sheriff in his official capacity are nothing more than claims against Harris County.</u>

Martinez also asserts a claim against Sheriff Gonzalez in his official capacity.  But as the Sheriff observes, Dkt. 13 at 6, suits against officials in their official capacity are really suits against the governmental entity itself.

---

[1] The complaint does mention an HCSO policy of not conducting internal affairs investigations if the complainant has a pending criminal case.  Dkt. 11 ¶ 34; *see* Dkt. 18 at 3-4.  But as discussed below, this policy is not itself unlawful, and even if it were, it could not have been the moving force behind any of the constitutional violations alleged.  *See infra* Part I.B.i.

Claims against governmental officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *See Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)).  Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

Because Martinez failed to state a claim against Harris County, *see infra* Part I.B, his claim against Sheriff Gonzalez likewise fails.  *See Garcia v. Harris Cnty.*, 2022 WL 3328272, at *2 (S.D. Tex. July 21, 2022) (same conclusion), *report and recommendation adopted*, 2022 WL 3283747 (S.D. Tex. Aug. 2022). All claims against the Sheriff should be dismissed.

**B.     Martinez failed to state a claim against Harris County.**

Martinez's claims against the County raise several theories: (1) promulgating an unspecified policy of unlawful detention, false arrest, malicious prosecution, and excessive force, *id.* ¶¶ 44, 50; and (2) failing to train, control, discipline, or supervise employees, Dkt. 11 ¶ 50.  These are deficient.

i.   <u>Martinez has not pleaded an actionable custom or policy that</u>
<u>was enacted with deliberate indifference to his rights.</u>

The complaint includes non-specific references to "policies, procedures, practices and customs" that allegedly led to the violations of Martinez's rights during the February 2020 incident. *See* Dkt. 11 ¶¶ 46, 50. Only one purported policy, however, is identified: HCSO's policy of not initiating internal investigations if the complainant is the subject of pending criminal charges. *Id.* ¶ 34. None of these allegations can support recovery against the County.

To state a claim against a municipality, a plaintiff must allege: (1) that "a deprivation of constitutional rights was inflicted pursuant to an official custom or policy"; (2) that a custom or policy, if facially innocuous, was "promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result"; and (3) there is a "direct causal link between the municipal policy and constitutional deprivation." *Piotrowski v. City of Hous.*, 237 F.3d 567, 579-80 (5th Cir. 2001) (internal quotation marks omitted). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor ...." *Monell*, 436 U.S. at 691. "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578 (footnote omitted).

Short of a written or formal policy, a plaintiff must show a "widespread practice" that "is so common and well settled as to constitute a custom." *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003). But such a pattern "requires similarity and specificity; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the *specific violation* in question." *Peterson v. City of Ft. Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (emphasis added; internal quotation marks omitted). Martinez's bald assertions that the County and HCSO engaged in unconstitutional policies and practices do not suffice. *See* Dkt. 18 at 6 (citing Dkt. 11 ¶¶ 43, 41, 44-51); *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) ("We have consistently required a plaintiff to plead specific facts, not merely conclusory allegations.") (internal quotation marks omitted); *Taylor v. Hartley*, 488 F. Supp. 3d 517, 542 (S.D. Tex. 2020) ("[The plaintiff] doesn't plead specific facts about the alleged policy. He simply states that such a policy exists based only on [the defendant's] conduct. This is insufficient.").

Martinez does identify one policy: that HCSO refused to investigate complaints by individuals who have pending criminal charges against them. Dkt. 11 ¶ 34. His allegations, however, are not analogous to the case he cites. Dkt. 20 at 2-4 (discussing *Black v. Stephens*, 662 F.2d 181 (3rd Cir. 1981)).

The decision in *Black* simply reflects the general rule that "a supervisor may be held liable when the supervisor's actions proximately caused the plaintiff's injury." *Terrell v. Harris Cnty.*, --- F. Supp. 3d ---, 2022 WL 4084434, at *6 (S.D. Tex. Sep. 6, 2022). That test was met in *Black*, but on a specific set of facts. 622 F.2d at 189-90. There, the evidence indicated that the officer exploited a policy similar to HCSO's by filing charges against the plaintiff to delay the officer's disciplinary hearing over plaintiff's pending excessive-force complaint. *Id.* at 190. This series of events provided a sufficient basis for the jury to find a "causal nexus" between the policy and the officer's "filing of unwarranted charges" against the plaintiff. *Id.*

The chronology alleged in Martinez's complaint differs materially from *Black*. By his own account, Martinez did not complain about the alleged use of excessive force until *after* the charges against him were dismissed. Dkt. 11 ¶ 32. At that point, HCSO's policy would not have prevented any investigation of Martinez's complaint. And there is no allegation that HSCO deputies previously filed charges against Martinez to thwart a potential investigation of a hypothetical complaint that was not yet made.

Martinez's additional allegation that he called the Sheriff's office the day after the incident, to complain about the woman who had made false allegations against him, is inapposite. *See* Dkt. 11 ¶ 33. There is no indication

that HCSO's policy limiting internal investigations of its *own* personnel has any bearing on citizen complaints about other citizens.

In sum, nothing in the complaint suggests that HCSO's policy was the moving force behind what happened to Martinez.  Martinez can only speculate that the policy led to the deputies' use of excessive force or to his false arrest. *See* Dkt. 18 at 4; *cf. Estate of Bonilla v. Orange Cnty.*, 982 F.3d 298, 311 (5th Cir. 2020) (affirming summary judgment for county when "[a] jury would have to resort to impermissible speculation to conclude that there was a 'direct causal link' between the alleged constitutional violation ... and [Bonilla's] death").  This claim should be rejected.

ii.   <u>Martinez failed to allege sufficient facts demonstrating a failure to train or supervise HCSO personnel.</u>

Martinez's theory that the County failed to adequately train or supervise the deputies' conduct fares no better.  To prevail, a plaintiff must show that "(1) the training or ... [supervising] procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the ... training [or supervising] policy, and (3) the inadequate ... training [or supervising] policy directly caused [the plaintiff] injury." *Pineda v. City of Hous.*, 124 F. Supp. 2d 1057, 1078 (S.D. Tex. 2000) (quoting *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000)). "A pattern of similar constitutional violations by untrained employees is

'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

Here, however, the complaint just asserts that the County adopted (unidentified) procedures with deliberate indifference. *See* Dkt. 11 ¶ 51. It provides no factual underpinnings suggesting there was a pattern of similar constitutional violations by untrained employees. *See Henderson v Harris Cnty.*, 51 F.4th 125, 130-32 (5th Cir. 2022) (affirming dismissal of failure-to-train claim); *see also Connick*, 563 U.S. at 62.

Martinez notes that "particularly egregious facts" can support liability for failure to train. Dkt. 18 at 5 (citing *Pineda*, 124 F. Supp. 2d at 1068). In doing so, Martinez alludes to a "single incident exception" to the general rule that a pattern of misconduct is necessary to show deliberate indifference. *See Pineda*, 124 F. Supp. 2d at 1083-86 (finding exception was not met). But this exception is "extremely narrow," *see Valle v. City of Hous.*, 613 F.3d 536, 549 (5th Cir. 2010), and is "generally reserved for those cases in which the government actor was provided no training whatsoever," *Hutcheson v. Dallas Cnty., Tex.*, 994 F.3d 477, 483 (5th Cir. 2021) (citing *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018)), *cert. denied*, 142 S. Ct. 564 (2021).

Martinez's allegations do not fall within the single-incident exception. He does not claim that the deputies received "no training whatsoever." *See Hutchenson*, 994 F.3d at 483. Rather, Martinez alleges that their training was inadequate in some unspecified respect. Dkt. 11 ¶ 45. Accordingly, his claims against the County are barred.

## II.   **Individual Defendants**

### A.   **Qualified immunity forecloses some, but not all, of the claims against Deputy Ybarra.**

In his motion to dismiss, Deputy Ybarra invokes qualified immunity, asserting that he had arguable probable cause to detain Martinez, and that his actions did not constitute excessive force as a matter of law. Dkt. 44 at 7-9. Deputy Ybarra also seeks dismissal of Martinez's state-law assault claim based on official immunity. *Id.* at 9-10. Martinez, however, responds that binding case law puts the unreasonableness of Deputy Ybarra's actions "beyond debate." Dkt. 47 at 6-15. The Court agrees that Martinez's excessive force and state-law assault claims survive dismissal at this stage. But his other claims against Deputy Ybarra should be dismissed.

### i.   Qualified immunity: legal standard.

Deputy Ybarra raised qualified immunity as a defense to "any claim" brought by Martinez. Dkt. 44 at 4. As Martinez notes, some jurisdictions require a defendant to raise "with particularity" the claims against which he

asserts qualified immunity. *See* Dkt. 47 at 3-4. But in the Fifth Circuit, once qualified immunity is invoked, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (quoting *McClendon*, 305 F.3d at 323).

Thus, the inquiry is whether the factual allegations, coupled with Martinez's contentions in his response brief, are sufficient to overcome qualified immunity.[2] At this stage, a plaintiff must assert "specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (quoting *Backe*, 691 F.3d at 648). The plaintiff must show that the officer's actions violated a constitutional right, and that the right was clearly established when the incident occurred. *Mace v. City of Palestine*, 333 F.3d 621, 623-24 (5th Cir. 2003).

There are three ways to show a right is clearly established. First, an on-point, controlling case can put the constitutional violation "beyond debate."

---

[2] When "a qualified immunity defense is asserted in an answer or motion to dismiss ... the court may [then], in its discretion, insist that a plaintiff file a reply" under Federal Rule of Civil Procedure 7(a). *Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016) (internal quotation marks omitted). Because Martinez has already responded to Individual Defendants' qualified immunity defense, Dkts. 33, 39, 47, further briefing is unnecessary.

*See, e.g.*, *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam).   Second, a "robust consensus of persuasive authority" can clearly define the contours of a constitutional right.  *See, e.g.*, *Wilson v. Layne*, 526 U.S. 603, 617 (1999).  Third, absent controlling authority or a robust consensus of persuasive authority, there may be instances where constitutional violation is nonetheless "obvious." *See Brousseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)).

When determining if the defendant's conduct violated a clearly established Fourth Amendment right, courts must define the right with a high degree of specificity.  *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). Although the standard "does not require a case directly on point," *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7-8 (2021) (per curiam), the Supreme Court nonetheless has reversed decisions that framed the inquiry without sufficient factual specificity, *see id.* at 8; *Mullenix*, 577 U.S. at 16-17; *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (rejecting reliance on the "history and purposes of the Fourth Amendment" to find a clearly established right).

        ii.   <u>Deputy Ybarra had arguable probable cause to conduct an arrest of Martinez.</u>

One claim against Deputy Ybarra disputes the constitutionality of Martinez's arrest.  *See* Dkt. 11 ¶ 31.  Ybarra asserts that he had an arguable

basis to conclude there was probable cause for the arrest.  Dkt. 44 at 8.  The Court agrees.

For Fourth Amendment false arrest claims, a plaintiff must allege "that [the arresting officers] did not have probable cause to arrest him." *Anokwuru v. City of Hous.*, 990 F.3d 956, 963 (5th Cir. 2021) (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)).  And to defeat qualified immunity, "plaintiffs must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrests." *Club Retro L.L.C. v. Hilton*, 568 F.3d 181, 207 (5th Cir. 2009).

"A warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment*." Davidson v. City of Stafford, Texas*, 848 F.3d 384, 391 (5th Cir. 2017).  "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

To justify Martinez's arrest, Deputy Ybarra emphasizes that a woman at the scene accused Martinez of attempted assault.  *See* Dkt. 11 ¶ 20; Dkt. 44 at

8-9. The complaint does not identify the officer with whom the woman spoke, but Martinez concedes that Deputy Ybarra was "told that [Martinez] tried to hit her." Dkt. 47 at 12. Martinez argues that *Beck v. Ohio*, 379 U.S. 89 (1964) and its progeny indicate that "[o]ne woman's uncorroborated claim is not 'arguable probable cause' in the Supreme Court's understanding ...." Dkt. 47 at 11-12. The cited authorities do not support his position.

For instance, the officers in *Beck* only had amorphous "reports" and "information" from unnamed informants. 379 U.S. at 93-94. In contrast, the officers here heard from the alleged victim who was interviewed at the scene. *See* Dkt. 11 ¶ 20; Dkt. 47 at 12.

Two other decisions similarly require officers to corroborate tips from *informants*, not complaints by alleged victims, with "independent police work." *Illinois v. Gates*, 462 U.S. 213, 241-42 (1983); *Adams v. Williams*, 407 U.S. 143, 148-49 (1972) (affirming probable cause where the officer "found the gun precisely where the informant had predicted"). Moreover, Martinez's allegations reflect that at least some "independent police work" was performed. Police arrived at an active crime scene. *See* Dkt. 11 ¶¶ 12-15 (injured man lying on the road). And Deputy Ybarra questioned Martinez about what had transpired before deciding to arrest him. *Id.* ¶¶ 23-24.

18

In addition, Martinez's authorities do not clearly establish that probable cause was lacking. Those decisions did not address similar factual circumstances: where a victim at the scene accused someone of attempting to assault her, and the officer interviewed the alleged perpetrator. *See Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 781-82 (5th Cir. 2022) (affirming qualified immunity where the plaintiff failed to "identify a case where a court found that an officer violated the Fourth Amendment" by arresting someone "in similar circumstances"). Deputy Ybarra is therefore entitled to qualified immunity for Martinez's arrest.

### iii. Martinez has abandoned his malicious prosecution claim against Deputy Ybarra.

Martinez's failure to defend his malicious prosecution claim against Deputy Ybarra warrants dismissal of that claim. "A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims." *Terry Black's Barbeque, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022). That principle applies forcefully here because a defendant's invocation of qualified immunity places the burden on the plaintiff to overcome the defense. *See Willis v. Bastrop Cnty.*, 2019 WL 252051, at *5 (W.D. Tex. Jan. 17, 2019) (plaintiff failed to meet this burden "because he has failed to even respond to the qualified immunity defense").

19

Despite pleading a malicious prosecution claim, *see* Dkt. 11 ¶¶ 41, 44, 51, Martinez does not even mention it when opposing to Deputy Ybarra's motion to dismiss, *see* Dkt. 47.  This claim should be dismissed.

       iv.   <u>The allegations are sufficient to overcome Deputy Ybarra's qualified immunity defense with respect to excessive force.</u>

A different result is warranted for Martinez's excessive force claim against Deputy Ybarra.  For this type of claim, a plaintiff must allege that the use of force caused "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).  Martinez adequately pleaded this claim.

Contrary to Deputy Ybarra's arguments, Martinez alleges far more than "[t]ight handcuffing alone ...."  *See* Dkt. 44 at 7-8 (citing *Glen v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).  The complaint also asserts that Deputy Ybarra "forcefully pulled [Martinez] out of the car," Dkt. 11 ¶ 24, yanked him by the handcuffs "extremely hard causing a high level of pain," *id.* ¶ 25, and slammed Martinez against a car, *id.* ¶¶ 29-30.

The complaint explicitly alleges that Deputy Ybarra injured Martinez. *Id.* ¶¶ 24-25, 27, 29-30.  For the remaining elements, courts evaluate multiple factors in assessing whether the use of force was excessive and clearly unreasonable.  *See Poole v. City of Shreveport*, 691 F.3d 624, 627-28 (5th Cir.

2012).  Those factors include "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 627 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (alterations in original).

Based on those factors, Martinez's complaint adequately asserts that Deputy Ybarra used excessive and clearly unreasonable force.  Particularly instructive is *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009).  There, a police officer broke the window to a suspect's car, dragged her from it, and slammed her against the car during a routine traffic stop.  *Id.* at 167.  Applying the *Graham* factors, the Fifth Circuit held that a reasonable jury could conclude that the officer had used objectively unreasonable force—particularly when Ms. Deville was suspected of a minor offense, her car was parked, there was no reason to believe she was going to use the car as a weapon, and she was not actively resisting.  *Id.*  Analogously, the allegations here indicate that Deputy Ybarra dragged an already handcuffed Martinez from a car and slammed him against it, with no indication that Martinez was resisting or otherwise posed a threat.  *See* Dkt. 11 ¶¶ 27-30.

The factual similarities between *Deville* and Martinez's allegations further indicate that Deputy Ybarra's conduct—as described in the

21

complaint—violated clearly established law. Like the plaintiff in *Deville*, Martinez was sitting in a parked car after being confronted for suspected wrongdoing supported by limited probable cause. *Compare* Dkt. 11 ¶ 23 (Martinez sitting in his parked vehicle), *with Deville*, 567 F.3d at 161 (Deville sitting in her parked car). Also like *Deville*, Deputy Ybarra dragged Martinez from and slammed him against a car. *Compare* Dkt. 11 ¶ 27-29 (asserting that Deputy Ybarra dragged Martinez from his car and slammed him, while already handcuffed, against the trunk of a car), *with Deville*, 567 F.3d at 162 (deputies pulled Deville from her car and slammed her against it). And the complaint alleges that Martinez posed less resistance than the plaintiff in *Deville*. *Compare* Dkt. 11 ¶ 30 (Martinez already in handcuffs), with *Deville*, 567 F.3d at 161-62 (Deville refusing officers' requests before being handcuffed). Martinez has pleaded enough facts to foreclose dismissal of this claim.

> v.    <u>Martinez has adequately pleaded a state law claim of assault against Deputy Ybarra.</u>

Regarding Martinez's assault claim, Deputy Ybarra invokes official immunity—a Texas-law analogue to qualified immunity. Dkt. 44 at 9 (citing *Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex. 2002)). Official immunity is an affirmative defense that protects officials who perform "(1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)

(citing, *inter alia*, *Perry v. Texas A & I Univ.*, 737 S.W.2d 106, 110 (Tex. App.—
Corpus Christi 1987, writ ref'd n.r.e.)).  Unlike qualified immunity, the burden
of establishing official immunity rests initially with the defendant officer.  *See*
*Morrison v. Walker*, 2015 WL 11102144, *9 (E.D. Tex. Sep. 24, 2015) (requiring
the government official to establish official immunity at the motion to dismiss
stage); *see also Gonzalez v. Cameron Cnty., Tex.*, 2006 WL 1710890, at *2 (S.D.
Tex. June 19, 2006) (denying motion to dismiss assault claim where officer
failed to affirmatively establish that he was entitled to qualified immunity).
Under federal pleading standards, dismissal based on official immunity is
appropriate only "if [the] pleadings reveal on their face that the defendants
acted in good faith." *Holcomb v. Berryhill*, 2009 WL 10699947, at *8 (W.D. Tex.
2009) (noting that this defense "is more appropriately raised in a motion for
summary judgment or at trial").

Deputy Ybarra's arguments for official immunity ignore explicit
allegations that he used excessive force apart from tightening Martinez's
handcuffs.  Dkt. 44 at 7.  The Court assumes, without deciding, that Deputy
Ybarra has demonstrated that the arrest in this case was a discretionary
function that occurred in the scope of his authority.  *See* Dkt. 44 at 6-7.  But as
reflected *supra*, Part II.A.iv, Deputy Ybarra still cannot show that a reasonably
prudent officer, under the same or similar circumstances, could have believed

that the degree of force he used during Martinez's arrest was reasonable. *See Gaytan v. City of Rockdale*, 2009 WL 10699021, at *10 (W.D. Tex. Jan. 13, 2009) ("In light of the Court's determination regarding the officers' qualified immunity for Plaintiffs' 1983 claims, the undersigned believes that Defendants have not proven, as a matter of law, that they acted in good faith such that they are entitled to an official immunity defense."). Dismissal of the assault claim is unwarranted.

### vi.   Martinez fails to state a claim for bystander liability against Deputy Ybarra.

Deputy Ybarra also seeks dismissal of Martinez's bystander liability claim, which alleges that Deputy Ybarra failed to intervene when another officer attempted to kick Martinez's legs out from under him. Dkt. 11 ¶ 28; Dkt. 44 at 4; Dkt. 47 at 8. An officer can be liable as a bystander if "the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *McDonald v. McClelland*, 779 F. App'x 222, 226–27 (5th Cir. 2019) (internal citations and quotation marks omitted).

When faced with a qualified immunity defense, a plaintiff must identify clearly established law that would require intervention under similar circumstances. *See Whitley v. Hanna*, 726 F.3d 631, 647 n.13 (5th Cir. 2013). Although it is "clearly established that an officer could be liable as a bystander

24

if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm," *see Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (cleaned up), a plaintiff still must sufficiently allege each of the elements with sufficient specificity, *see Campos v. City of Port Lavaca*, 2021 WL 5826783, *6 (S.D. Tex. Dec. 8, 2021) ("An officer's mere presence at the scene, without more, is insufficient to establish a claim for failure to intervene.") (internal citations omitted).

Even viewing the allegations in the light most favorable to Martinez, the Court concludes that Martinez has failed to demonstrate that bystander liability—as presented here—was clearly established at the time of this incident. The only case he cites—*Joseph v. Bartlett*, 981 F.3d 319, 345-46 (5th Cir. 2020)—*reversed* the denial of qualified immunity for a bystander claim. *See* Dkt. 47 at 8. There, the court addressed certain officers' failures to intervene while other officers used excessive force. 981 F.3d at 325-32. Despite concluding that the evidence supported the elements of bystander liability, the Fifth Circuit held that the plaintiffs failed to provide clearly established law that put the illegality of the bystanders' actions beyond debate. *Id.* at 345-46.

The same deficiency forecloses Martinez's bystander claim. Martinez had to show that "any reasonable officer would have known to intervene under these circumstances," *id.*, at 345—and *at the time of the alleged incident*, *see*

*Ashcroft*, 563 U.S. at 741 (limiting analysis of clearly-established law to cases decided "at the time" of the challenged conduct). Yet the *Joseph* case was decided in November of 2020, about nine months after Martinez's incident occurred. *See* 981 F.3d at 319; Dkt. 44 at 8. Deputy Ybarra is thus entitled to qualified immunity on this claim.

### B. Martinez has not stated a cognizable claim against Lieutenant Hernandez.

Martinez asserts the same claims of unlawful arrest, excessive force, and malicious prosecution against Lieutenant Hernandez. Dkt. 11 ¶ 41. His sole factual allegation about Hernandez cannot sustain these claims.

i. <u>There are no factual allegations that Hernandez used excessive force or committed malicious prosecution.</u>

According to the complaint, Deputy Ybarra made a phone call to Lieutenant Hernandez, and both officers decided to charge Martinez for interfering with public duties. Dkt. 11 ¶ 31. Given that Hernandez was not at the scene, he cannot be liable for using excessive force. This claim is foreclosed.

Martinez's malicious prosecution claim against Lieutenant Hernandez is barred because Martinez has abandoned it. *See supra* Part II.A.iii (failure to defend a claim subjects it to dismissal). His response brief does not discuss or defend this claim, much less assert any authority supporting it. To the extent Martinez asserts that Hernandez wrongfully arrested him, that claim is just

as deficient as the parallel claim against Deputy Ybarra. *See supra* Part II.A.ii. This Court should dismiss the malicious prosecution and any wrongful arrest claim against Hernandez.

ii. <u>Martinez's supervisory liability claims against Lieutenant Hernandez fail as a matter of law.</u>

Martinez's complaint arguably raises a supervisory liability claim against Lieutenant Hernandez. *See* Dkt. 11 ¶¶ 44-51; *see also* Dkt. 33 at 4 (citing Dkt. 11 ¶ 31 and asserting that Lieutenant Hernandez is liable as for failing to train and supervise his subordinates). But the allegations in the complaint cannot sustain this claim.

As explained above, supervisors can only be liable for actively participating in a constitutional violation or for implementing or enforcing unconstitutional policies. *See supra* Part I.A.i; *Baker*, 75 F.3d at 199. The Court has already dispensed with the sole factual allegation addressing Hernandez's actions. *See supra* Part II.B.i (rejecting malicious prosecution and false arrest claim). The Court also concluded that the supervisory claims against the County and Sheriff Gonzalez should be dismissed for lack of an actionable policy. *See supra* Part I.A.ii.; Part I.B. Likewise, there is no basis for a supervisory claim against Lieutenant Hernandez, particularly when no allegations link him to any asserted policies in this case.

27

**C.** **Martinez fails to state a cognizable claim against Deputy Henderson.**

    i.    The allegations do not show that Henderson used excessive force or committed false arrest, malicious prosecution, or assault.

Martinez sued another officer, Deputy Henderson, for his involvement in the February 2020 incident. According to Martinez, Deputy Henderson used unreasonable and excessive force by pushing him "for no reason" while Martinez was being pulled from the car. Dkt. 11 ¶ 26; *see also* Dkt. 39 at 5. Despite alleging that the push injured him, Martinez has not alleged any facts reflecting that the force used was "clearly excessive" and any excessiveness was "clearly unreasonable." *Tarver*, 410 F.3d at 751. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ... violates the Fourth Amendment." *Graham*, 490 U.S. at 396. In addition, Martinez does not cite any binding precedent reflecting that Henderson's push was clearly excessive, as necessary to overcome qualified immunity. *See* Dkt. 39 (providing no supporting authority for Martinez's excessive force claim against Henderson). The excessive force claim therefore fails.

As for the assault claim, Martinez has abandoned it by failing to defend it when responding to Henderson's motion to dismiss. *See supra* Part II.A.iii, (citing *Terry Black's Barbeque*, 22 F.4th at 459); Dkt. 39. This claim should be dismissed.

To the extent asserted, any claims of false arrest and malicious prosecution against Deputy Henderson are wholly unsupported. Again, the only allegation against Henderson asserts that he pushed Martinez. Dkt. 11 ¶ 26. There is no factual basis for concluding that Henderson falsely arrested or maliciously prosecuted Martinez. These claims are barred.

> ii.   <u>Martinez has not stated a bystander liability claim against Henderson.</u>

Martinez also brings a bystander liability claim against Deputy Henderson—a claim that Henderson has not meaningfully addressed. *See* Dkt. 11 ¶ 26; Dkt. 39 at 8-9. Nonetheless, Deputy Henderson's request to dismiss "any" claim compels further analysis. Dkt. 37 at 4, 11.

Martinez's allegations are insufficient to support bystander liability. "An officer's mere presence at the scene, without more, is insufficient to establish a claim for failure to intervene." *Campos*, 2021 WL 5826783, at *6 (internal citations omitted). But that is all the complaint alleges. Henderson is mentioned only once, for pushing Martinez during the arrest. *See* Dkt. 11 ¶ 26. Nothing indicates that Deputy Henderson knew about Deputy Ybarra's or the other officer's use of force, *see id.* ¶¶ 25, 27-30, let alone that Henderson had a "reasonable opportunity to prevent the harm." *See, e.g.*, *Cruz v. Delgado*, 2017 WL 11503868, at *7-8 (S.D. Tex. Dec. 7, 2017) (dismissing claim where

bystander lacked knowledge of arresting officer's reason for detaining suspect). This is fatal to Martinez's claim, warranting its dismissal.

## III.   <u>Leave to Amend and Stay of Discovery</u>

Martinez's responses to the motions to dismiss include a conclusory request for leave to amend his complaint.  Dkt. 18 at 7; Dkt. 33 at 6; Dkt. 39 at 9; Dkt. 47 at 15-16.  As his sole justification, Martinez declares that "[l]eave to amend should be 'freely give[n],' especially where, as here, any issues with Plaintiff's complaint cited by Defendants could be cured by repleading."  *E.g.*, Dkt. 39 at 9.  This is inadequate to justify another amendment.

Generally, leave to amend a pleading shall be freely given "when justice so requires."  Fed. R. Civ. P. 15(a).  The standard is different when—as here— the deadline for amending pleadings has expired.  *See* Dkt. 27 (July 31, 2022 deadline); Dkt. 49 (revised scheduling order, noting that pleadings deadline has passed).  In that instance, the movant must demonstrate good cause for modifying the scheduling order before the more liberal standard for amending pleadings can apply.  *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *see also* Fed. R. Civ. P. 16(b)(4) (requiring good cause to modify a scheduling order).  Whether good cause exists depends on "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the

amendment; and (4) the availability of a continuance to cure such prejudice."
*T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 418 (5th Cir. 2021) (citing
*Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010)). "The
trial court [also] acts within its discretion in denying leave to amend where the
proposed amendment would be futile because it could not survive a motion to
dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d
465, 468 (5th Cir. 2010).

Applying these factors, Martinez has not demonstrated good cause for
further amending his complaint. Martinez does not advance any reason for
permitting another amendment. He does not articulate what new allegations
he would include, or how those allegations would rectify the many deficiencies
in his pleading. Absent such an explanation, amendment is properly denied
as futile. *See Rio Grande Royalty*, 620 F.3d at 468.

Moreover, permitting amendment would prejudice all defendants, by
further delaying a case that has been pending for a year and still remains at
the pleading stage. *See Conklin v. Novartis Pharmas. Corp.*, 2012 WL
4127295, at *6 (E.D. Tex. Sept. 18, 2012) ("In a sense, it would always be
possible to give more time to a party trying to avoid judgment. But that results
in a never-ending burden on a Defendant, and the case is prolonged far beyond

what is reasonable, contrary to the goals of Federal Rule of Civil Procedure 1."). Martinez's request for leave to amend should be denied.

Finally, Deputy Ybarra and Deputy Henderson have asked for a stay of discovery pending resolution of their motions to dismiss. Government officials typically are entitled to a stay of discovery upon invoking qualified immunity. *See Freeman v. United States*, 556 F.3d 326, 342-43 (5th Cir. 2009) (collecting cases). But because qualified (or official) immunity should not bar some of the claims against Deputy Ybarra, *see supra* Part II.A.iv-v, his motion for stay should be denied. *See, e.g.*, *Hernandez v. City of Grand Prairie, Tex.*, 2017 WL 4098596, *14 (N.D. Tex. Sep. 15, 2017) (vacating stay of discovery after denying in part a motion to dismiss on qualified immunity grounds). As for Deputy Henderson, dismissal of all claims against him would moot his request for a stay. *See supra* Part II.C. Deputy Henderson's request for stay therefore should be denied as moot.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Sheriff Ed Gonzalez's motion to dismiss (Dkt. 13), **GRANT** Harris County's motion to dismiss (Dkt. 12), **GRANT** Lieutenant John Hernandez's motion to dismiss (Dkt. 29), and **GRANT** Deputy Jacoby Henderson's motion to dismiss (Dkt. 37).

It is further **RECOMMENDED** that the Court **DENY IN PART** Deputy Louis Ybarra's motion to dismiss (Dkt. 44) with respect to the excessive force and assault claims against him, but **GRANT IN PART** the motion with respect to all other claims against Deputy Ybarra.

It is further **RECOMMENDED** that Plaintiff Jose Martinez's request for leave to amend be **DENIED**, that Deputy Henderson's request for a stay of discovery (Dkt. 37) be **DENIED as MOOT**, and Deputy Ybarra's request for a stay of discovery (Dkt. 44) be **DENIED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 14, 2023, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge

33