United States District Court
Southern District of Texas
**ENTERED**
March 05, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jose Martinez, | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Case No. 4:22-cv-00547 |
| v. | § | |
| | § | |
| Harris County, Texas, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## **MEMORANDUM AND RECOMMENDATION**

Defendant Deputy Louis Ybarra has filed a motion to exclude the expert opinions of Keith Howse, Dkt. 68, and a motion for summary judgment on all of Plaintiff Jose Martinez's claims, Dkt. 69.  After carefully considering the motions, Martinez's responses, Dkt. 78, 79, Deputy Ybarra's reply, Dkt. 75, and the applicable law, it is recommended that Ybarra's motion for summary judgment (Dkt. 69) be granted and his motion to exclude expert opinions (Dkt. 68) be denied as moot.

Deputy Ybarra also filed a motion requesting a thirty-day extension of all trial-related deadlines, Dkt. 80 at 1, which Martinez opposed, Dkt. 82. Because the foregoing recommendations, if adopted, would foreclose any trial, the Court grants a broader stay of all remaining deadlines in this case.

## Background

Late one evening in February 2020, Martinez was driving home when he saw three adults confronting a juvenile male in front of a middle school. Dkt. 79-1 at 1 (Martinez declaration). The juvenile was hog-tied on the ground, straddled by one adult and surrounded by the others. *Id.* Concerned for the juvenile's safety, Martinez pulled over to offer his assistance. *Id.* The juvenile had visible scratches on his face and pleaded with Martinez, "Help me, man!" *Id.* The three adults told Martinez to leave. *Id.* Instead, Martinez parked his car close by and waited for the police. *Id.* at 2.

One adult, who claimed to be the juvenile's mother, left to fetch an officer that was stationed at the nearby middle school. *Id.* After a few minutes, Martinez began to doubt whether the woman would summon the authorities, so he dialed 911 on his cell phone. *Id.* During his call, the mother returned with a law enforcement officer from Aldine Independent School District ("AISD"). *Id.* Hearing that an officer had arrived, the 911 dispatcher ended the call. *Id.* But the woman then shouted, in front of the AISD officer, that Martinez had tried to hit her. *See id.* The officer told Martinez to stay in his vehicle and walked over to the others. *Id.*

After some time passed, Deputy Ybarra arrived on the scene, along with his trainee, Deputy Jacoby Henderson. *See* Dkt. 69-2 at 3 (DX-B, Ybarra declaration). They had responded to a call from a woman who claimed that

2

someone had made a "terroristic threat." *Id*. Upon arrival, Deputy Ybarra claims the AISD officer told him that "a male may have pulled a gun on a female and threatened her."[1] *Id*. Deputy Ybarra directed another officer to speak to the woman "to see what's going on." Dkt. 69-4 at 00:29 (DX-D, body camera footage). Ybarra then approached Martinez's car, which was parked with the driver's side window rolled down. *See id*. at 00:38.

Upon arriving at Martinez's car, Deputy Ybarra asked Martinez for identification. *Id*. at 00:41. Martinez was not forthcoming. Instead, he asked Deputy Ybarra, in a hostile tone, why he wanted his ID. *See id*. at 00:45. Deputy Ybarra responded, "because I'm asking you, sir." *Id*. at 00:46. Martinez demanded again to know why he was being asked for identification. *See id*. at 00:47. Deputy Ybarra explained, "I was advised you might have pulled a gun on somebody." *Id*. at 00:52. Martinez asserted, "they lied." *Id*.

Deputy Ybarra requested, for a third time, that Martinez provide his ID. *Id*. at 00:53. Instead of complying, Martinez paused for several seconds and then asked, "Am I being arrested?" *Id*. at 00:59. Deputy Ybarra answered, "at this time, you are not free to go, so yes." *Id*. at 1:01. While Martinez asked again if he was being arrested, Deputy Ybarra opened the car door, cuffed

---

[1] The record includes footage from a body camera, but there is no audio for portions of that footage, including Deputy Ybarra's discussions with others immediately upon his arrival. *See generally* Dkt. 69-4.

Martinez's left hand, grasped his arm, and pulled him out of the car, stating, "until I can figure out what's going on, get out of the car." *Id.* at 1:09-13.

Deputy Ybarra then instructed Martinez to turn around. *Id.* at 1:14. A brief scuffle ensued. *Id.* at 1:14-29. With the help of other officers, Deputy Ybarra pushed Martinez against the car and cuffed his hands behind his back. *See id.* After he was fully restrained, Martinez asked, twice, "what am I under arrest for?" *See id.* at 1:29-35. Deputy Ybarra did not respond directly but spoke to the dispatcher, advising that one male was being detained and "was resisting." *See id.* at 1:35-39.

More back-and-forth ensued. Deputy Ybarra noted that he had asked for ID, and Martinez responded that he had asked if he was under arrest, maintaining that he was not obligated to provide his ID unless he were arrested. *See id.* at 1:51-2:02. Deputy Ybarra declared that he would call the district attorney and "we'll just put your ass in jail." *Id.* at 2:05-10. Martinez responded "okay, we'll see what happens to you." *Id.* at 2:10-11. As Martinez continued to talk, Deputy Ybarra told him to "shut up." *Id.* at 2:30-39.

Deputy Ybarra then walked over to the vehicle where a woman was sitting in the front passenger's seat. *Id.* at 2:39-40. He asked, "ma'am, did he pull a gun on you?" *Id.* She said no, but she claimed that Martinez had threatened her. *Id.* at 2:40-46. According to her account, she and others had chased her son for hours, after reporting him missing, and had finally

4

restrained her son on the ground. *Id.* at 2:59. Martinez allegedly responded, "shut the f*** up, b*tch." *Id.* at 3:05. She told him, "this is not regarding you." *Id.* at 02:53. But Martinez indicated that he did not believe her, insisting that he would stay at the scene. *Id.* at 3:17. The woman also explained that when she went to get the AISD officer, her daughter witnessed Martinez putting something inside his trunk. *Id.* at 3:36. A subsequent search of the car did not turn up a weapon. *Id.* at 31:53-33:09.

Another officer walked Martinez to a squad car, where Deputy Ybarra joined them. After another exchange, Deputy Ybarra repeated his prior statement that Martinez had been resisting arrest. *See id.* at 4:37-41.

A few minutes later, Deputy Ybarra entered the patrol car where Martinez had been placed. *See id.* at 5:43. Martinez complained that the handcuffs were too tight, prompting more back-and-forth regarding the reasons for Martinez's arrest. *See id.* at 5:45-6:55. Deputy Ybarra ultimately exited the car, opened the rear door, and asked Martinez to get out and lie on the ground so he could adjust the cuffs. *Id.* at 6:55-7:08. Martinez responded that he had an injured knee that prevented him from lying or kneeling on the ground. *Id.* at 7:08-40. Together with another officer, Deputy Ybarra walked Martinez over to the trunk of a police car, pushed him against it, and adjusted the handcuffs. *Id.* at 7:40-8:33.

According to Martinez, Deputy Ybarra's "manhandling" during the incident caused abrasions and muscle pain that lasted for weeks.  Dkt. 79-1 at 2-3.  Martinez did not seek medical treatment for these injuries.  *See* Dkt. 69-6 at 12 (DX-F, Ybarra's expert report).

Martinez was charged with interference with public duties.  *See* Dkt. 11 at 8.  On March 6, 2020, the charge was dismissed for lack of probable cause.  Dkt. 1-1 (PX-1).

Martinez filed suit against Harris County, Sherriff Ed Gonzalez, Lieutenant John Hernandez, Deputy Jacoby Henderson, Deputy Ybarra, and various unnamed Harris County Sheriff's deputies, alleging various constitutional violations under 42 U.S.C. § 1983 and asserting an assault claim under Texas law.  Dkt. 1; Dkt. 11.  All named Defendants filed motions to dismiss.  *See* Dkt. 12, 13, 29, 44.  The Court granted the motions to dismiss except for a few claims against Deputy Ybarra for excessive force, assault, and malicious prosecution.  Dkt. 54.

As the last defendant, Deputy Ybarra filed a motion for summary judgment on Martinez's remaining claims, Dkt. 69, and a motion to exclude the opinions of Martinez's expert, Dkt. 68.  Deputy Ybarra also requested a thirty-day stay of all trial deadlines in light of his motion for summary judgment.  Dkt. 80.  The motions are ripe for review.

## Legal Standard

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue it addresses "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (citing *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)).

When resolving a motion for summary judgment, courts must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted). "[T]he court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party …." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 584 (5th Cir. 2001). In addition, courts must credit all reasonable inferences from the evidence, without "weigh[ing] evidence or mak[ing] credibility findings." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022) (citations omitted). But "[u]nsubstantiated assertions,

improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003)).

Once a defendant "invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). To meet that burden, a plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. Leblanc*, 691 F.3d 645, 648 (5th Cir. 2012).

## Analysis

Based on this Court's prior order, only three claims are left in this case, and all are against Deputy Ybarra: excessive force under the Fourth Amendment, malicious prosecution, and assault. Dkt. 54. Yet both parties expend pages debating Martinez's false arrest claim under 42 U.S.C. § 1983, which was dismissed at the pleading stage. *Compare* Dkt. 54 (adopting Dkt. 50 at 16-19, which concluded that Deputy Ybarra had probable cause to arrest Martinez), *with* Dkt. 69 at 12-15 (Ybarra's brief); Dkt. 79 at 7-11 (Martinez's brief). There is no reason to address a claim that the Court already concluded was legally barred. *See United States v. U.S. Smelting Refin. & Mining Co.*,

339 U.S. 186, 198 (1950) (under law-of-the-case doctrine, "when an issue is once litigated and decided, that should be the end of the matter").

Although Deputy Ybarra also seeks exclusion of Martinez's expert witness, *see* Dkt. 68, the expert's testimony has no bearing on the few remaining claims.[2]   As the conclusions below reflect, the Court need only address the summary-judgment motion.

**I.   Deputy Ybarra is entitled to qualified immunity on the excessive force claim under Section 1983.**

Deputy Ybarra argues that he is entitled to qualified immunity under 42 U.S.C. § 1983 against Martinez's allegations of excessive force.  Dkt. 69 at 10-11.  To overcome qualified immunity at this stage, Martinez must raise "a genuine fact issue as to whether [Deputy Ybarra's] allegedly wrongful conduct violated clearly established law."  *See Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2014) (internal quotation marks omitted).  This inquiry has two components.  The first step asks whether the official's actions violated a constitutional right.  *See Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc).  The second step determines if the right in question was "'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *See id.*

---

[2] Indeed, Martinez invokes his expert only with respect to the false arrest claim that has been dismissed.  *See* Dkt. 79 at 9, 11.

Courts can analyze the two prongs of the qualified immunity test in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the law is not clearly established, then the court can skip the first inquiry and move directly to the second one. *Id.* But addressing both inquiries "is often beneficial." *Id.* In this case, the Court opts to address both prongs of the test.[3]

**A.   Ybarra's actions do not constitute excessive force.**

Deputy Ybarra argues that he did not use excessive force when arresting Martinez because (a) Martinez had refused to comply with lawful demands; and (b) the degree of force used to effectuate Martinez's arrest was reasonable. *See* Dkt. 69 at 15-16. Martinez responds that the force was unreasonable, given that (a) "the only arguable crime that applies here is interference, which is not severe or violent"; (b) Martinez did not pose a safety threat, nor did he actively resist arrest before being pulled out of the car; and (c) the application of force caused "long-term pain and numbness." *See* Dkt. 79 at 11-12.

To establish that Deputy Ybarra violated his Fourth Amendment right to be free from excessive force, Martinez "must show (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and

---

[3] Martinez questions the legal underpinnings of qualified immunity. Dkt. 79 at 16-18. But given binding precedent holding that officers enjoy qualified immunity, the merits of his contentions are not for this Court to resolve.

(3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Martinez has not met his burden.

First, Martinez's own account evinces only minor injuries. His declaration complains of pain, abrasions, and bruising from the handcuffs and the exacerbation of his knee injury from "manhandling." *See* Dkt. 79-1 at 2-3. Even if these injuries are more than *de minimis*, they are nonetheless minor. *See, e.g., Solis v. Serrett*, 31 F.4th 975, 982 (5th Cir. 2022) (collecting authorities). Indeed, nothing in the record indicates that Martinez sought medical treatment for his injuries. *See Buehler v. Dear*, 27 F.4th 969, 983 (5th Cir. 2022) (failure to seek medical treatment beyond "self-care" is evidence that the injury is minor). Martinez's lack of serious injury supports Deputy Ybarra's contention that he acted reasonably. *See id.* (same conclusion where the plaintiff sustained bruises and abrasions during an arrest).

The next two inquiries address the amount of force used and the reasonableness of that force. For these inquiries, the Supreme Court has prescribed several non-exclusive factors, including "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The *Graham* factors weigh in Deputy Ybarra's favor. First, Martinez downplays the severity of the crime, maintaining that his suspected offense of

interfering with law enforcement "is not severe or violent." Dkt. 79 at 12. But Deputy Ybarra argues, and the record reflects, that he had reason to believe that the suspected crime was serious. *See* Dkt. 75 at 2. Deputy Ybarra was responding to a report of a "terroristic threat," and an AISD officer at the scene indicated that Martinez may have threatened someone with a gun. *See* Dkt. 69-1; Dkt. 69-2 at 3. The first factor weighs in favor of Deputy Ybarra.

For the second *Graham* factor—whether there was an immediate threat to the safety of others—the allegation that Martinez was armed made it reasonable for Deputy Ybarra to fear for the safety of others. A search of Martinez's vehicle did not locate a weapon, and the allegation was later retracted. *See* Dkt. 69-4 at 2:40-46, 31:53-33:09. But threats to safety are viewed from the officer's standpoint when the incident occurred. *See Graham*, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). This factor also favors Deputy Ybarra.

The third factor—whether Martinez resisted arrest—tips, if at all, only slightly against Deputy Ybarra. Martinez's failure to cooperate with Deputy Ybarra's requests for identification constitutes "passive resistance," which does not alone justify the use of force. *See Solis*, 31 F.4th at 982. Also, Deputy Ybarra cuffed Martinez's left hand, grabbed his arm, and pulled him out of the car, without first asking or otherwise providing an opportunity for Martinez to

exit the vehicle voluntarily.  *See* Dkt. 69-4 at 1:09-13; *see also Trammell v. Fruge*, 868 F.3d 332, 342 (5th Cir. 2017) ("[T]he quickness with which the officers resorted to tackling Trammel [sic] to the ground militates against a finding of reasonableness.").

On the other hand, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Graham*, 490 U.S. at 396 (alterations and internal quotation marks omitted).  Martinez's failure to fully cooperate lends some justification to the use of minimal force.  His refusal to identify himself reasonably suggested that he would not voluntarily submit to arrest.  Body camera footage also reflects that Martinez struggled with Deputy Ybarra for a few seconds after he was removed from his vehicle, before Ybarra and other officers were able to fully restrain him.  And only slight force was used, resulting in only minor injuries.

Martinez's heavy reliance on *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020), is misplaced.  *See* Dkt. 79 at 11-12.  *Bartlett* involved a mentally ill man who was beaten to death by multiple officers despite offering no resistance and crying out for help.  *See id.* at 325-27.  Deputy Ybarra's use of minimal force comes nowhere close to the beating in *Bartlett*.

Even viewing the facts in the light most favorable to Martinez, Deputy Ybarra's actions were not objectively unreasonable.  At most, Martinez

sustained slight injuries, and at least two of the three factors weigh in Ybarra's

favor.  *See Solis*, 31 F.4th at 983 (affirming finding of no excessive force where

the injuries were minor and only one *Graham* factor weighed in the officer's

favor).  As a matter of law, Deputy Ybarra did not use excessive force.

### B.   Deputy Ybarra's use of minimal force did not violate clearly established law.

Martinez's excessive force claim also fails at the second step, as he cannot

show that Deputy Ybarra violated his clearly established rights.  There are

three avenues for showing a right is clearly established.  First, an on-point,

controlling case can put the constitutional violation "beyond debate."  *See, e.g.,*

*Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Ashcroft v. al–*

*Kidd*, 563 U.S. 731, 741 (2011)).  Second, a robust consensus of persuasive

authority can clearly define the contours of a constitutional right.  *See, e.g.,*

*Wilson v. Layne*, 526 U.S. 603, 617 (1999).  Third, absent controlling authority

or a robust consensus of persuasive authority, there may be instances where

constitutional violation is "obvious."  *See Brosseau v. Haugen*, 543 U.S. 194,

199 (2004) (per curiam) (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)).

Martinez fails to satisfy these standards.

Martinez cites five cases to assert that Deputy Ybarra's conduct violated

a clearly established Fourth Amendment right.  Dkt. 79 at 14-15 (citing *Doss*

*v. Helpenstell*, 626 F. App'x 453 (5th Cir. 2015) (per curiam); *Ramirez v.*

*Martinez*, 716 F.3d 369 (5th Cir. 2013); *Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012); *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009*)* (per curiam); *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000)).[4] None of those decisions track the facts underlying this case at "a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *See Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

All of Martinez's cases involved a markedly greater use of force. In *Doss*, the officer repeatedly bashed the suspect on the head with a pistol, rendering him unconscious.[5] 626 F. App'x at 455. In *Ramirez*, the officers tased the suspect twice, once while he was already handcuffed and on the ground. 716 F.3d at 372-73. The suspect in *Newman* was tased three times and beaten with a baton. 703 F.3d at 760. In *Deville*, officers smashed the suspect's car window and threw her against the vehicle so forcefully that she could not walk without falling to the ground. 567 F.3d at 162. And in *Goodson*, officers broke the suspect's shoulder and forcibly handcuffed him on the ground. 202 F.3d at

---

[4] Martinez cites three other cases for the notion that tackling a non-resisting suspect to the ground is objectively unreasonable. *See* Dkt. 79 at 14 (citing *Trammell v. Fruge*, 868 F.3d 332, 343 (5th Cir. 2017); *Bartlett*, 981 F.3d at 341-42; *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018)). These authorities are off-point because Martinez was not tackled or pushed to the ground.

[5] Also, as an unpublished decision, *Doss* cannot clearly establish any right. *See Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019) ("Because nonprecedential opinions do not establish any binding law for the circuit, they cannot be the source of clearly established law for qualified immunity analysis.") (internal citation omitted).

734.   These actions bear no resemblance to Deputy Ybarra cuffing one of Martinez's hands and pulling him out of the car.

Instead, a more analogous case is *Solis*, 31 F.4th at 975-88.  There, an officer arrested a passenger, Solis, for public intoxication during a traffic stop. As an officer grabbed her arm, Solis fell to the ground.  *See id.* at 979.  The officer then pressed his knee to Solis's back as another officer handcuffed her. *Id.*  Solis complained of suffering pain during and after the arrest.  *See id.* at 981.  But the Fifth Circuit held that the officers had not violated Solis's clearly established rights, distinguishing many of the same cases cited by Martinez because they addressed much greater use of force.  *See id.* at 986-87 (distinguishing *Deville*, *Newman, Goodson,* and *Bartlett*).  Importantly, the court emphasized that it had "repeatedly found no constitutional violation" on similar facts, even where a largely compliant plaintiff was not told he was under arrest, moved his arm, and was taken to the ground.  *See id.* at 986-87 (discussing *Tucker v. City of Shreveport*, 998 F.3d 165 (5th Cir. 2021)).

Just like *Solis*, Martinez's cited authorities lack crucial parallels with the facts in this case, which involve only a minimal use of force toward a partially non-compliant suspect who suffered minor injuries.  Deputy Ybarra told Martinez he was under arrest, cuffed one of Martinez's hands, grabbed his arm, pulled him out of the car, and fully handcuffed him against the car after Martinez struggled.  *See* Dkt. 69-2 at 2-3; Dkt. 69-4 at 00:38-1:21.  Ybarra also

16

adjusted the handcuffs when Martinez complained they were too tight. *See* Dkt. 69-1 at 3; Dkt. 69-4 at 7:47.

In the words of *Solis*, "[i]f there is no constitutional violation where the officers perform a takedown on a mostly compliant plaintiff who was never told he was under arrest and whose form of active resistance was jerking his arm away, it is difficult to say that there was a 'clearly established' violation here." 31 F.4th at 987 (distinguishing *Tucker*, 998 F.3d at 176-81). Martinez has not identified a controlling case that clearly establishes that his Fourth Amendment rights were violated.

*Solis* also forecloses any suggestion that a robust consensus of persuasive authority clearly demonstrates that Deputy Ybarra's conduct violated the Fourth Amendment. *See Wilson*, 526 U.S. at 617. And given the minimal force used and Martinez's failure to cooperate, it was hardly "obvious" that Martinez's constitutional rights were violated. *See Brosseau*, 543 U.S. at 199. Because Ybarra is entitled to qualified immunity, summary judgment is warranted on Martinez's excessive force claim.

## II.  Deputy Ybarra is entitled to official immunity on the assault claim under Texas law.

The foregoing conclusion that Deputy Ybarra did not use unreasonable force overlaps in material part with Deputy Ybarra's invocation of official immunity as a defense to Martinez's state-law claim for assault. Official

immunity is an affirmative defense that protects officials who perform "(1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). For this defense, Texas law "focuses solely on the objective legal reasonableness of the officer's conduct." *Cantu v. Rocha*, 77 F.3d 795, 809 (5th Cir. 1996) (citing *Chambers*, 883 S.W.2d at 656-57).

As his sole contention, Martinez argues that Deputy Ybarra failed to conclusively establish his official immunity claim. *See* Dkt. 79 at 16. Martinez is correct that Deputy Ybarra has the burden of proving his entitlement to official immunity. *See Morrison v. Walker*, 2015 WL 11102144, *9 (E.D. Tex. Sep. 24, 2015) (citing *Chambers*, 883 S.W.2d at 653, noting that unlike qualified immunity, the burden to show official immunity rests initially with the defendant officer). But for substantially the same reasons stated above, Deputy Ybarra has met his burden. *See supra* Part I.A.

Martinez does not dispute the first and third elements of official immunity, *i.e.*, that Deputy Ybarra was performing his discretionary duties and acted within the scope of his authority. Indeed, as a Deputy Sheriff, Ybarra was investigating an alleged crime, thereby acting well within his scope of authority. *See* Dkt. 69-2 at 3.

For the second element—good faith—Deputy Ybarra must show that "a reasonably prudent officer, under the same or similar circumstances, *could*

18

have believed" that his conduct was justified. *See Rockwell*, 664 F.3d at 993 (quoting *Chambers*, 883 S.W.2d at 656). He has done so. Deputy Ybarra was responding to a "terroristic threat" and had reason to believe Martinez was armed with a gun. *See* Dkt. 69-2 at 3. When Martinez refused to identify himself, Deputy Ybarra used only minimal force to pull Martinez out of the car and arrest him, causing only minor injuries. *Id.* On these facts, a reasonably prudent officer could believe that these actions are justified. Accordingly, official immunity bars the assault claim.

## III.   **Martinez's malicious prosecution claim is not cognizable.**

Martinez's live pleading also asserted a malicious prosecution claim against Deputy Ybarra. *See* Dkt. 11 at 11-12. Deputy Ybarra argues that a malicious prosecution claim under Texas law would be barred by limitations. *See* Dkt. 69 at 17 (maintaining that Martinez filed suit more than one year after the underlying criminal charge was dismissed, citing Tex. Civ. Prac. & Rem. Code § 16.002). In response, Martinez clarified that his claim is governed solely by federal law. *See* Dkt. 79 at 13 ("This action is unrelated to the state law malicious prosecution claim."). Martinez has therefore abandoned any reliance on Texas law for this claim.

As for malicious prosecution under Section 1983, the Court agrees with Deputy Ybarra that this claim fails as a matter of law. *See* Dkt. 69 at 15; Dkt. 75 at 3. To overcome qualified immunity, Martinez would need to show that

19

Deputy Ybarra violated established constitutional rights "at the time of the [his] alleged misconduct." *Guerra v. Castillo*, 82 F.4th 278, 289 (5th Cir. 2023) (quoting *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011)).  Martinez was arrested on February 27, 2020, and all charges were dismissed a month later. *See* Dkt. 1-1 (PX-1); Dkt. 79-1 at 1, 3.  At that time, however, the Fifth Circuit had rejected a "freestanding right under the Constitution to be free from malicious prosecution." *See Anokwuru v. City of Hous.*, 990 F.3d 956, 964 (5th Cir. 2021); *see also Guerra*, 82 F.4th at 289 ("Fifth Circuit case law between 2003 and 2021 explicitly denied the possibility of a constitutional malicious prosecution claim.").  Only years later did the Supreme Court hold that malicious prosecution claims are actionable under Section 1983, as Fourth Amendment violations.  *Thompson v. Clark*, 596 U.S. 36 (2022).

In short, binding case law—through the time of Martinez's arrest and the subsequent dismissal of charges against him—had "disclaimed the existence of a constitutional claim for malicious prosecution." *See Guerra*, 82 F.4th at 289.  As a result, Martinez cannot show that Deputy Ybarra conduct violated clearly established law.  Qualified immunity therefore forecloses Martinez's malicious prosecution claim.

20

## IV.    Deputy Ybarra has shown good cause for staying all remaining deadlines.

Recently, Deputy Ybarra filed a motion asking for a thirty-day extension of all trial-related deadlines so that the Court could first resolve his summary judgment motion.  Dkt. 80.  Opposing the request, Martinez argues that a court need not rule on a motion for summary judgment before trial.  Dkt. 81.

Martinez's position ignores the purpose of Fed. R. Civ. P. 56.  A motion for summary judgment determines *whether* any claim or defense should proceed to trial.  *See Anderson*, 477 U.S. at 249 (there is "no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").  This mechanism is doubly important for immunity defenses that confer a right to avoid standing trial and would irrevocably be impaired if not resolved pre-trial.  *See, e.g.*, *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986) (per curiam) (listing these reasons when concluding that a denial or refusal to rule on an immunity claim is immediately appealable).  The recommendation that summary judgment be granted merely underscores the existence of good cause for extending remaining deadlines.

But a thirty-day extension would not provide sufficient runway for preparing and resolving objections to this opinion.  Accordingly, it is ordered that all remaining deadlines are stayed until the Court determines whether to adopt the undersigned's recommended disposition of this case.

<u>**Recommendation**</u>

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Deputy Louis Ybarra's motion for summary judgment (Dkt. 69) on Plaintiff Jose Martinez's remaining claims and **DENY** as moot Ybarra's motion to exclude the expert opinions of Keith Howse (Dkt. 68).

It is further **RECOMMENDED** that that Court enter a final judgment pursuant to Fed. R. Civ. P. 58(a), stating that Martinez shall take nothing on his claims.

It is further **ORDERED** that Ybarra's motion to extend all remaining deadlines (Dkt. 80) is **GRANTED**, and that all deadlines in the scheduling order (Dkt. 62) are **STAYED** pending further order of this Court.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on March 5, 2023, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge